## Burgin v. Forbes et al.

March 2, 1943.

John S. Noland for appellant.

George C. Robbins and J. P. Chenault for appellees.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

The appellant Frank Burgin and appellee Ernest Davis own adjoining land in Madison county, Kentucky. Appellee Forbes is the tenant of his coappellee, Davis, and has the possession and beneficial use of the Davis land. In January, 1939, appellees, as plaintiffs below, brought this action in the Madison circuit court against appellant pursuant to section 1780, Carroll's Kentucky Statutes, now section 256.010, KRS, and other related sections of the statutes pertaining to division fences between adjoining land owners, seeking a mandatory injunction against appellant to compel him to rebuild and maintain a division fence and a gate on his land, or that they, plaintiffs, be permitted to go upon the land of defendant for the purpose of constructing a division fence, and that defendant be enjoined and restrained from interfering with plaintiffs in the construction of the fence.

The substance of the allegations of the petition is that plaintiff Davis and defendant own adjoining tracts of land which are improved and under fence and that there is a division fence along the boundary line between the lands of the parties which fence has existed by mutual agreement and acquiescence of the respective owners of the adjoining lands for more than sixteen years before the filing of the petition; that the division fence was long ago divided for the purpose of maintenance between the respective owners of the adjoining land and that plaintiffs are now maintaining a lawful fence upon their portion of the line as provided by section 256.010, KRS. It is further alleged that there exists a roadway and passway running from the Richmond and Lexington turnpike (now U. S. 25) over and across the land of the plaintiffs to a point in the said division line between the lands of plaintiffs and defendant, and thence over and across the land of defendant, and that the roadway is used by the defendant, his family and employees in traveling from defendant's land, and passes over and across the dividing line between the lands of plaintiffs and defendant at a point in the dividing line which is in the portion of the line where it is the duty of defendant to maintain the division fence. They alleged further that for more than sixteen years before the filing of the petition a gate or gateway has been maintained across the roadway at the point where same crosses the division line for the use and benefit of persons traveling over and

using the roadway, and that the gateway was and is necessary to the defendant and plaintiffs in order to keep their respective tracts of land enclosed, which gateway has existed and been maintained as aforesaid until on or about the —day of May, 1937, at which time the defendant removed same without any lawful right or authority to do so.

It is alleged further that since the removal of the gate by defendant he has failed and refused to keep or maintain a lawful fence on his portion of the division line for a distance of approximately 30 feet at and near to the place where the road crosses the dividing line and which includes the gateway mentioned above, and that his failure to so maintain a lawful fence including the gateway on his portion of the dividing line exposes the land of plaintiffs to the depredation of livestock and makes it impossible for plaintiffs to keep their livestock within the boundary of their land; that the fields of both plaintiffs and defendant adjoining on each side of the dividing line are grass lands under fence and used for pasturing their respective livestock.

After setting out the facts substantially as stated above, plaintiffs alleged further that unless the defendant is mandatorily compelled to maintain a lawful fence at the points mentioned above the plaintiffs will suffer great and irreparable damage and injury, in that constant and repeated trespassing by livestock will result in a multiplicity of suits by reason of the damages resulting from repeated trespassing by the livestock of plaintiffs upon the lands and fields of others, and that the livestock of defendant can and will continually trespass upon the land of the plaintiffs, and that unless defendant be compelled to maintain his portion of the division fence in a lawful manner the plaintiffs will be deprived of the use and enjoyment of their land and will suffer great and irreparable injury and loss and will have no adequate or complete remedy at law.

By paragraph two of the petition plaintiffs further alleged that on the 13th day of June, 1938, through and by the sheriff of Madison county, Kentucky, plaintiffs notified the defendant in writing, as provided by section 1785 of Carroll's Kentucky Statutes, KRS 256.070, to rebuild and restore the division fence at the point in the division line between the lands of the parties where he has been failing and refusing to maintain a lawful fence

.as described in paragraph one, but defendant has failed and refused to rebuild, construct or reconstruct the fence at said point, as prescribed in section 256.010, KRS.

They further alleged, in substance, that there was some feeling existing between the parties and it might be dangerous to their lives or persons of plaintiffs for them to undertake to repair or rebuild the fence at the point mentioned above as they are given the right to do under section 1785 of Carroll's Kentucky Statutes, and asked that defendant be enjoined and prohibited from interfering with plaintiffs or their agents or employees in so repairing and rebuilding the fence in a lawful manner, and asked that the court enter an order mandatorily requiring defendant to reconstruct and restore the gateway and lawful fence at the point set out above or to enter an order enjoining and restraining defendant from hindering or interfering with plaintiffs in going upon the land at the place mentioned and restoring the fence and gateway.

In paragraph three plaintiffs further alleged that at a point on defendant's land a few feet back from the division line where the above mentioned roadway crosses the same and where defendant has removed the gate and failed to maintain a lawful division fence, defendant has constructed across and in said roadway a large pit which is approximately 4 feet deep, 12 to 15 feet long, and 10 feet wide, and over which pit he has placed about 11 iron bars or pipes at varying distances of several inches apart; that vehicles, especially automobiles, can travel over and across the pit but that livestock cannot cross same without great danger of falling in the pit and seriously injuring or killing themselves. They stated further that the way and manner in which the pit is constructed and located it constitutes and is a continuing nuisance and danger to the livestock of plaintiffs and that they cannot pasture their livestock in their fields adjoining the pit without materially endangering their lives and limbs, and that the pit hinders and prevents them from using and enjoying their land to which they are legally entitled.

Defendant filed his answer in which he admitted that the division fence referred to in the petition had long since been divided but denied that plaintiffs were maintaining their part thereof. He categorically denied practically all other allegations of the petition as set out in

paragraphs one and two, and for answer to paragraph three he denied that since the alleged removal of the gateway defendant had constructed a "pit" across said roadway. He further pleaded that at a point about 20 feet north of the division line between the lands of plaintiffs and defendant and where the latters' land adjoins the roadway known as "Hinds Creek Road" defendant had a gateway and at this point he moved his fence back from the roadway about 30 feet and constructed a "cattle guard" (referred to by plaintiffs as a "pit") across the entrance to his home to prevent his stock from coming from his premises to the road or stock from the road entering his premises, and that no stock can cross or has ever crossed the said cattle guard; that to the side of the cattle guard he erected a gateway for the purpose of taking his team or stock that might be convenient to move to or from his premises. He further said that at no time had he ever moved any gate from across the roadway and that the fence between the lands of plaintiffs and defendant, or the end of the fence adjoining said road, is the fence of plaintiffs and not the fence of defendant.

After the filing of the answer plaintiffs filed their amended petition stating that since the filing of their original petition plaintiffs had erected a good and lawful fence and gate at the point on the division line between plaintiffs' and defendant's lands where the roadway used by defendant crosses and passes through the line for the purpose of enclosing their lands and keeping the livestock upon their own land and preventing the stock of defendant from coming upon plaintiffs' land; that before building the fence and gateway they had notified defendant to do so which he refused to do and that since the erection of the fence and gate defendant had repeatedly from day to day chained the gate back against the fence and to a post and finally removed the gate and threw it into the creek, thereby exposing the land of plaintiffs to trespassers, etc., as described in the original petition. Defendant filed his amended answer in which he alleged that the cattle guard built and constructed by him is 7 feet across and 9 feet wide, and that the pit is about 3 feet 6 inches deep and that the guard is constructed of 4 inch iron pipes, 10 in number, and spaced about 5⅛ inches apart; that as constructed no livestock on defendant's farm can cross the cattle guard to the highway, nor from the highway to the land of defendant. By

agreement of the parties all affirmative allegations in the pleadings not specifically denied or otherwise pleaded to were controverted of record.

As we have seen from the resume of the pleadings above that by defendant's answer and amended answer he admitted that he had removed the fence and gate referred to in plaintiffs' petition, but pleaded that he had constructed a cattle guard in the place of the gate and that the guard was sufficient to turn livestock and answered the same purpose as the gate, while plaintiffs contend that it would not turn livestock and was unsafe, etc. Plaintiffs filed a demurrer to the answer and answer as amended, which the court overruled apparently because defendant had alleged that the cattle guard was sufficient to turn livestock, and was safe. When the case came on for trial plaintiffs moved for an issue out of chancery which motion the court sustained and a jury was empaneled to try the issue of fact of whether or not the cattle guard constructed by defendant was sufficient to turn livestock and was safe, as contended by defendant. Plaintiffs then moved that defendant be required to assume the burden of proof since he had admitted the removal of the gate and the construction of the cattle guard as a substitute for the gate, and relied upon the sufficiency, safety, etc., of the cattle guard as a defense, which motion the court sustained, but defendant refused to introduce any proof, whereupon the court instructed the jury to find a verdict for the plaintiffs which was followed by a judgment of the court granting plaintiffs the relief sought in the petition. Defendant has appealed.

While the pleadings are voluminous and many questions are raised, yet in their final analysis the only issue made was whether or not the cattle guard constructed by defendant was a lawful fence in contemplation of section 256.010, KRS. That section of the statutes reads:

"Definitions. (1) 'Lawful fence' means:
"(a) A strong and sound fence, four feet high, so close that cattle cannot creep through, made of rails, or plank, or wire and plank, or iron, or hedge, or stone or brick; or

"(b) A ditch three feet deep and three feet broad, with a hedge two feet high or a rail, plank, stone, smooth or barbed wire or brick fence two and

one-half feet high on the margin of the ditch, if the fence is so close that cattle cannot creep through.''

In connection with the statute supra, it may be noted that section 1783 of Carroll's Kentucky Statutes, now section 256.030, KRS, provides that each party shall be required to keep a lawful fence on his portion of the line.

Plaintiffs insist that the cattle guard or pit constructed by defendant and described in the pleadings is not a lawful fence in contemplation of the statute and, therefore, the answer was insufficient to constitute a defense and the court should have sustained plaintiffs' demurrer thereto. On the other hand, defendant claims that any construction or barrier sufficient to turn stock is a lawful fence within the meaning of the statute although not specifically mentioned by name. Defendant cites us to an Indiana statute and other authorities defining what constitutes a lawful fence which, of course, are more liberal than our Kentucky statutes, since they do not undertake to set out definitely what shall constitute a lawful fence. Since, however, the Kentucky legislature has set out in detail what constitutes a lawful fence, we are bound by our own statute. We do not think that a cattle guard can be read into the statute even by implication. Defendant also refers to section 1793, Carroll's Kentucky Statutes, 256.150, KRS, pertaining to railroad cattle guards and insists that Kentucky law recognizes cattle guards as such enclosures as may come within the meaning of a fence or a substitute therefor where it might be impracticable to construct a regular fence as defined by section 256.010, KRS. We think that is correct insofar as it relates to railroad cattle guards since it is impracticable to construct a fence or any barrier across a railroad track except a cattle guard, but we do not think it is impracticable to construct the sort of fence described in section 256.010, KRS, at the place and location of the gate and fence here involved, and hence section 256.150 of the statutes relating to railroad cattle guards has no connection with section 256.010, KRS, the former being designed especially for railroads and the latter relating to division line fences between adjoining land owners. We do not think these sections of the statutes can be read into each other so as to apply either one of them to either subject matter. The legislature set out what shall constitute a lawful fence between adjoining land owners not only by the commonly

known name, but described with particularity the nature and manner of construction, neither of which suggests or implies a cattle guard. The statute does provide that a ditch of certain dimensions with a hedge or other barriers constructed on the margin thereof shall constitute a lawful fence, but not the ditch alone without such other barriers.

We think the construction of the statute, section 1780, is governed by the legal maxim inclusio unius est exclusio alterius, meaning the inclusion of one thing is the exclusion of another (31 C. J. 396); or, the maxim expressio unius est exclusio alterius, meaning the expression of one thing is the exclusion of another (25 C. J. 220). We conclude, therefore, that the cattle guard or pit referred to is not a lawful fence within the meaning of section 1780 of the statutes, and this being true the answer fails to state a defense and the court should have sustained the demurrer thereto. This conclusion makes it unnecessary to determine the question of whether or not the court properly or improperly required defendant to assume the burden of proof.

Defendant insists that the demurrer to the petition should have been sustained because there was no allegation that any cattle or other livestock had crossed the cattle guard or had been injured in attempting to do so. Since, however, the cattle guard or pit described in the pleadings does not constitute a lawful fence within the meaning of the statute, the allegations that defendant had removed the gate and built the pit or cattle guard described in the pleadings and had refused to reconstruct the gate and the fence, is sufficient to state a cause of action and, any allegation with respect to whether or not livestock could, had or might cross the pit or become injured in attempting to do so, is mere surplusage.

Judgment affirmed.