**JOAN E. PFISTER, Plaintiff**

v.

**FRANK J. PFISTER, Defendant**

Fam. No. D47/1982

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

March 4, 1987

SORAYA DIASE, ESQ., St. Thomas, V.I., *for plaintiff*

FREDERICK G. WATTS, ESQ., St. Thomas, V.I., *for defendant*

CHRISTIAN, *Senior Sitting Judge*

# MEMORANDUM OPINION

## I. INTRODUCTION

At this juncture, the issue facing the Court in this bifurcated trial is whether a separation agreement entered into by the parties, settling the items of alimony and division of marital property between them, and incorporated in a decree a mensa et thoro, was intended by the parties to be abrogated, and was abrogated by their conduct, either as to alimony or property settlement, or both. We answer both questions in the negative, although we hold that because of local statute law, different principles, both substantive and procedural, apply to both.

## II. THE FACTS

The parties were granted a decree of divorce a mensa et thoro on March 29, 1979. The decree reserved "for their own private settlement within a reasonable time" the questions of alimony and division of property. In response to this provision of the decree, the parties executed such an agreement on both subjects on May 3, 1979. On July 9, 1979, the plaintiff, through her attorneys at that time, Bailey, Wood, and Rosenberg (Frederick D. Rosenberg, Esquire, of counsel) moved the Court to amend the a mensa decree to incorporate therein the terms and provisions of the agreement.[1] After the Court requested a response by defendant to this motion on July 12, 1979, and received defendant's consent thereto on July 19, 1979, the Court, on July 19, 1979, granted the motion.

Between the date of the original decree and the date the separation agreement was executed, defendant remained in the family home, although not reconciled, because he had no place to go. Defendant then moved out of the family home and lived separate and apart from the plaintiff until Thanksgiving Day, 1979, a period of about six months. Following a reconciliation of the parties, the defendant returned to the family home and resumed life with the plaintiff including cohabitation, which continued until the fall of

---

[1] The motion referred to the agreement as Exhibit "A" and characterized it as settling between the parties the division of property. The motion did not mention alimony, but Paragraph 14, the last paragraph of the agreement, provided for the payment of alimony of $150.00 a week, payable bi-weekly. The date payment is to commence is not stated, but that being the case it is not unreasonable to find that the commencement date intended by the parties was that of the agreement, May 3, 1979.

1981 when, following a period of deterioration of the relationship, the defendant removed from the family home permanently.

At trial there was considerable conflict in the evidence as to which of the fourteen terms of the agreement the parties performed. But in view of the legal position we take in this case, the only facts that will be relevant, and which we find are (1) that the parties resumed life together under the same roof and in the same bed and board with resumption of cohabitation and fully reconciled for a period of two years following their first separation; (2) that upon reconciliation bonds totalling about $28,000.00, which had been evenly divided upon the prior separation, were reunited in the possession of the plaintiff; (3) that in the interim plaintiff used the proceeds of more than her half of the bonds to aid in her support; and (4) that during the period of reconciliation they conducted their life together in total disregard of the terms of the agreement, although this is not to be understood to mean that they did not do some of the things provided in the agreement, but to the extent this may have occurred it was not with the intention of complying with the terms of the agreement but was no more than coincidental, would have occurred even if the agreement did not exist.

On February 19, 1982, plaintiff sued for a decree of divorce absolute. This was granted the parties on May 24, 1982. In that decree, the Court said plaintiff is entitled to alimony, and if the parties cannot agree within a reasonable time on alimony and division of property, the Court retains jurisdiction to dispose of those issues.[2] Paragraph 2.

On October 23, 1985, we granted plaintiff's Motion for Reconsideration of our Order of Dismissal of July 31, 1985, to the effect that the questions of the fixing of the amount of alimony to be paid, and how the marital property was to be divided between the parties were res adjudicata, and relief, due to violation of the rights of the parties in either respect, based on the terms of the agreement and/or

---

[2] Plaintiff interprets this action of the Court to mean that the Court found the agreement to have been abrogated, but this issue was not litigated so that any such finding could or would have been appropriate and binding on either side. At most, that action of the Court meant that the questions, at the juncture, remained undecided by action of the Court and/or the parties themselves. Judge Hodge did say in Paragraph 2 of his Decree of May 24, 1982, that the plaintiff is entitled to alimony, and in Paragraph 3 that the plaintiff shall have exclusive possession of the family dwelling until the matter of property division is settled. But no one has ever said otherwise. Therefore, these are non-issues.

the a mensa decree, should be sought by either a proceeding for contempt, if the plaintiff takes the position that the separation agreement is merged in, and is an integral part of, the a mensa decree, or by an action for breach of contract, i.e., the terms of the separation agreement, only, if plaintiff takes the position that the agreement is not merged in the decree. Having thus issued a vacatur of our Order of Dismissal, we granted plaintiff the right to file an amended complaint for a decree of divorce absolute which, although granted, reserved for future determination, by the parties, or the Court, the questions of alimony and property settlement. The Court directed plaintiff, in her amended complaint, to allege with specificity the grounds on which plaintiff bases her claim that the separation agreement, whether incorporated in the decree or not, had been abrogated by the parties. This amended complaint was filed and answered, and the first of the issues thus joined, whether there was in fact an abrogation of the agreement, came on for trial on January 22, 1987, at 11:00 a.m.

## III. DISCUSSION

We begin our discussion by listing the issues which arise from the foregoing fact situation:

(A) Was the separation agreement valid and enforcible?

(B) Was there a reconciliation of the parties?

(C) Can the alimony provisions of such an agreement having become an integral part of the decree a mensa et thoro be abrogated or modified by the parties without the intervention of the Court?

(D) Given the provisions of 16 V.I.C. § 110, does the Court have the authority to abrogate or amend those provisions of the decree which divide and settle the marital property between the parties?

### A.

■ While at trial on the issue of abrogation, the plaintiff testified that she did not sign the agreement freely and with full knowledge of its contents, meaning and effect, and also disclaimed knowledge of the motion made to the Court to incorporate it into the decree, the Court finds the contrary is the fact in both respects. In making this finding, we have, inter alia, noted that plaintiff was represented by separate, independent, qualified and experienced counsel, and that in executing the agreement, plaintiff signed the related documents, not once but three times, i.e., the main document and Exhibits "A" and "B" attached thereto.

6

## B.

■ There is litle or no conflict in the testimony of both parties that after some months of separation they resumed life together under the same roof, that there was a resumption of cohabitation, and that this conduct continued for about two years. We find that this conduct constituted a reconciliation, that there was a mutual intention of the parties upon such resumption of their life together to be fully reconciled. See 35 A.L.R.2d, section 10. While some authorities hold that where a husband and wife have made a separation agreement and thereafter have become reconciled and resume cohabitation, the agreement is abrogated (35 A.L.R.2d at 714 et seq.), these cases do not allude to separation agreements which, as the separation agreement in the case before us, have been incorporated in, and have become an integral part of, a decree of the Court, so that the mandate of 16 V.I.C. § 110 applies.

## C. & D.

Our discussion on Parts C and D is so inextricably intertwined that we must address them both at the same time.

Here we must be guided by and apply a well-known rule of statutory construction, e.g., Inclusio Unius est exclusio alterius, "the inclusion of one is the exclusion of all others." 11 Coke, 58b; Burgin v. Forbes, 293 Ky. 456, 169 S.W.2d 321, 325 (Black's Law Dictionary, Revised Fourth Edition). The statutory law of the Virgin Islands of the United States governing the rights and obligations of persons in domestic relations, and more specifically the subjects of Divorce and Annulment, is codified at 16 V.I.C. chapter 3. After specifying the grounds and method of procedure to commence and maintain an action for limited or absolute divorce or annulment, and what interlocutory and final orders may be issued by the Court, §§ 101–109 id., the statute provides in section 110 the following language:

### MODIFICATION OF FINAL ORDERS:

At any time after a judgment is given the Court, upon the motion of either party on notice, may set aside, alter or modify so much of the judgment as may provide alimony or for the appointment of trustees, for the care and custody of the minor children, or the nurture and education thereof, or the maintenance of either party in the action.

It will be noted that while the statute authorizes the Court at any time after a judgment is given, "upon motion of either party, on notice, to set aside, alter, or modify so much of the judgment as may provide for alimony, or for the appointment of trustees, for the care and custody of the minor children, or the nurture or education of the minor children, or for the maintenance of either party in the action," after the inclusion and specification of all these subjects that the Court is given authority to consider in any post-decree application as we have in this case, no authority is given the Court to deal with any provisions in the decree relating to the settlement of the property rights of the parties. Applying this rule of statutory construction to this case, not having been given any such authority, it is the position of the Court that we do not have such authority, and we therefore must decline to use it.

As recently as November 17, 1986, Chief Judge of the District Court, Almeric L. Christian, citing Black's Law Dictionary, Fifth Edition, page 687, applied this principle, in the case of the Government of the Virgin Islands, Plaintiff v. Jose Lima, Sr., Defendant (Criminal No. 83-84), which so far has not become a part of the published reports. Applying this principle he states on page 7 of his Opinion that since the Revised Organic Act of the Virgin Islands vests in the Governor the power to grant pardons and reprieves and to remit fines and forfeitures against local laws, but does not include in the powers enumerated the power to commute sentences, the latter power is excluded, and cannot be exercised by the Governor.

We take the position that the distinctly different treatment provided in the statute as to support of relations on the one hand, in which case the Court may amend or set aside its order relating to this subject, and to the division of property on the other, in which case the Court may not, is not difficult to understand. While circumstances dealing with support are subject to continuing and continuous change, property rights once decided upon become vested interests which the Court may not interfere with without proper application and due process. Changes in the rights of property can result only from the application, not of the substantive and procedural principles of the law of domestic relations, or by the parties doing nothing as in the case sub judice, but from the application of the principles of property law. Thus, while the behavior of the parties in a domestic relations setting such as their reconciliation and resumption of cohabitation may, upon sufficient

8

showing to the Court, justify the Court in altering its decree as to support, reconciliation of the parties and their resumption of cohabitation cannot clothe the Court with any such power with regard to their prior division of property, whether such separation agreement containing such division of property was or was not, but more so if it was, incorporated in a decree of divorce whether, limited or absolute. See 35 A.L.R.2d, pp. 712 et seq.

Even if we were not limited in our authority by the aforesaid statute with regard to any application to change the decree as it relates to the division of property by the parties, we would be clearly limited by general principles of constitutional law. No man, including these parties, can be deprived of his property interests, already vested, without due process of law. That due process must find its source and life, not in the domestic relations and behavior of the parties without more, but from some independent basis, some act of the parties, not necessarily springing from the marital union, which gives the one party the right to claim property, title to which is vested in the other party. 35 A.L.R.2d, sections 2, 3, 4, pp. 711 et seq.

Even here, we are instructed that "the preferred view is that a reconciliation and resumption of cohabitation do not alone abrogate a true property settlement." 35 A.L.R.2d at page 717. We are not saying that the provisions of 16 V.I.C. § 110 prevent the parties from making new agreements with respect to their marital property and its division, and the Court should not enforce this while their intention to do so is clear. But we are saying our statute law does not authorize us to entertain applications in domestic relations actions to amend final orders, judgments or decrees with respect to executed or even executory property division agreements.

■ But where there is a violation of the provisions of a property settlement agreement, incorporated in a decree or not, the parties are not remediless. They can sue for breach of the agreement to obtain specific performance or damages; or, in a proper case, they can bring an action to have the offending party punished for contempt of Court.

■ We therefore hold that upon this application to the Court, pursuant to authority granted by 16 V.I.C. § 110, the Court may set aside, alter or modify so much of the a mensa et thoro decree of March 29, 1979, as amended July 19, 1979, as relates to alimony, but the Court is without authority to tamper with that part of the separation agreement of May 3, 1979, incorporated in the decree,

9

which provided for the division of the marital property. Any such change in the property status of the parties can come not by the parties doing nothing as is the case here, but only by conduct of the parties themselves which is sufficient to constitute a valid legal alienation of property interests, e.g., gift, deed, bill of sale, etc., or, if violation of property rights is claimed, by appropriate independent action to obtain relief.

## IV. CONCLUSION

IN SUM:

1. The alimony provisions of a separation agreement duly executed by the parties, and incorporated in a decree of legal separation, cannot be abrogated or amended by the parties without judicial intervention.

2. Where the parties have entered into a valid separation agreement which includes the division of marital property, the parties themselves, by appropriate action, can make such changes in the division as they see fit, but cannot abrogate the agreement by merely doing nothing.

3. The Court has no authority to abrogate or amend those provisions of separation agreements which are incorporated in, and become an integral of, final decrees in domestic relations cases which divide marital property between the spouses.

4. If, in the instant case, the separation agreement had not been incorporated in, and become an integral part of, the decree, our decision as to the authority of the parties themselves to make changes with respect to alimony without the intervention of the Court, and as to the Court's authority to take action which has the effect of abrogating or amending the final decree with respect to the division of property would be completely different.

## INTERLOCUTORY ORDER

The Court having this date issued its Memorandum Opinion in the premises, it is hereby

ORDERED:

1. That the separation agreement entered into by the parties on May 3, 1979, and incorporated into the decree of legal separation between them on July 19, 1979, is valid and is not abrogated.

10

2. That the status quo of the marital property of the parties continues not as it was prior to the agreement and the decree but in accordance with the terms of the agreement as incorporated in the decree. This Order is without prejudice to either party, who believes he or she has been injured by any wrongful conduct of the other, taking appropriate action to obtain relief.

3. That the parties, or either of them, may present evidence at a time which is mutually agreeable to the Court and the parties to determine if the alimony provisions of the decree of legal separation should be modified due to changed circumstances affecting the parties.