# IN THE MATTER OF THE ESTATE OF CLAUDE CARON, DECEASED

Probate No. 138/1977

Probate No. 141/1977

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

December 16, 1987

 

HENRY L. FEUERZEIG, ESQ. (DUDLEY, TOPPER & FEUERZEIG), St. Thomas, V.I., *for First Pennsylvania Bank*

CAROL ANN RICH, ESQ. (CAMPBELL & ARELLANO), St. Thomas, V.I., *for Aimery and Leslie Caron*

CHRISTIAN, *Senior Sitting Judge*

## OPINION AND ORDER

## I. INTRODUCTION

This matter is before the Court on motions presented by Aimery and Leslie Caron, heirs at law of the above-mentioned deceased (the Heirs or the Heirs of Caron) under the heading Response of the Administrator to the "Final Accounting" of Executor Pro Tem dated October 5, 1987, to: (1) reject the final accounting presented by the Bank as made according to law; (2) deny the Bank's application to be discharged as Administrator Pro Tem; (3) order the Bank to immediately cease all further distributions from the estate or the trust; (4) to immediately surrender to the general administrator of the estate, upon his posting of bond, the remainder of the assets of the estate and the trust; and (5) order the Administrator Pro Tem to submit vouchers and other supporting documentation for all disbursements made by it to date (hereafter "The Response"). The motions will be granted in all respects.

## II. FACTUAL BACKGROUND

On January 23, 1974, Claude Jean Caron (Caron) executed a trust agreement with the First Pennsylvania Bank and Trust Company (The Bank) and Caron as joint trustees, the corpus of the trust consisting of six notes payable to Caron by West Indies Corporation, a Virgin Islands Corporation, between April 5, 1975, and October 15, 1977, each in the principal sum of Sixty Thousand Dollars ($60,000.00), and real estate designated as Parcels 1L and 1M Estate Wintberg, No. 3 Great Northside Quarter, St. Thomas, United States Virgin Islands; and during his lifetime Caron, and after his death Robert H. Odell and Monique C. Odell, husband and wife, as beneficiaries of the trust. Lucette Caron Graves, of Mendi Verdia, 64 Urrugne, France, was named conditional beneficiary,

or, in case of her death, her descendants, per stirpes, were named conditional beneficiaries, the condition being that neither Odell spouse survived Caron.

On March 14, 1975, Caron executed a Will which left the bulk of his estate to Monique Odell. See P. 9 of Court's Opinion dated February 28, 1987, declaring the Will null and void.

Caron died a domiciliary of St. Thomas, Virgin Islands, on July 17, 1977, leaving assets, according to paragraph 6 of the Petition filed on November 16, 1977, "in excess of $100,000.00." This Petition was filed by the Bank and Monique C. Odell, and prayed the Court to admit the aforesaid Will to probate and record; to issue Letters Testamentary to Petitioners, who were named in Paragraph Thirteen of the Will as co-executors; to waive bond; and to appoint appraisers to appraise the assets of the estate. (Probate No. 141-1977.)

A Declaration of Contest of the aforesaid Will, dated March 21, 1978, was filed by Aimery Pierre Caron and Leslie Caron (The Contestants) pursuant to 5 V.I.C., App. V, Rule 24, to set aside the said Will on the ground that it was executed as a result of the exertion of undue influence on Caron.

On September 1, 1978, suit was filed in the District Court of the Virgin Islands to have the aforesaid trust declared null and void.

On April 28, 1986, this Court entered Judgment declaring the Will null and void on the grounds that it was the product of undue influence exerted on Caron.

On February 2, 1987, this Court granted a motion filed on January 29, 1987, declaring the trust null and void for the reason that it, too, was the product of undue influence exerted on Caron.

Upon stipulation of the parties involved in all the pending actions, namely: the proceeding to administer the estate of Caron, the civil action contesting the validity of the Will, and the civil action contesting the validity of the trust, the Court on January 23, 1978, entered an Order appointing the Bank as Executor Pro Tem, and thereby authorized the Bank to collect debts; pay current incidentals and necessary expenses for the protection, conservation and collection of the assets; retain Thomas O'Connell and Charles Waggoner to resolve certain tax problems arising out of matters prior to the death of Claude Caron; to sell the AMC Pacer automobile; rent the real property at Estate Wintberg; distribute certain personalty to Leslie and Aimery Caron; hire and pay an appraiser and issue citations.

On October 5, 1987, the Bank filed what it described as a Final Accounting of the Executor Pro Tem in which it alleged that it fulfilled the obligations of its trust; is prepared, upon order of the Court, to turn over the assets of the estate and the trust to Aimery Caron, the general administrator appointed by the Court on March 10, 1987; to forward to this Court a statement by Aimery Caron acknowledging the same; and requested that the Court grant it a discharge as having fulfilled the obligations of its trust as Executor Pro Tem, to which office it was appointed by aforesaid Order of January 24, 1978.

The instant motions by the Heirs, dated October 16, 1987, followed.

## III. DISCUSSION

### A. TERMINOLOGY, ISSUES

For the sake of simplicity and clarity, we will refer to any person or entity appointed to represent Caron and his estate by the generic term of personal representative, whether special or general. Thus, the Bank will also be referred to, where relevant and appropriate, as the special personal representative (the SPR), and Aimery Caron will be referred to, where relevant and appropriate, as the general personal representative (the GPR).

The exceptions taken by the Heirs of Caron to the Final Accounting submitted to the Court give rise to three issues: (1) Did the Bank, either as SPR or as trustee, have the authority to make the expenditures to which exceptions have been taken? (2) Did the Bank submit its Final Accounting in the form prescribed by law, including the statute and rule applicable thereto? (3) Whether the Bank should forthwith cease all further distributions from the estate and the trust and surrender to the GPR the remainder of the assets of the estate and the trust, upon posting the $600,000.00 administrator's bond previously fixed by the Court.

### B. SCOPE OF AUTHORITY

To answer the first question, we must first look to the sources of the authority of the SPR, and then to the actions it took in the exercise of that authority.

There were and are two sources of authority. The first is 15 V.I.C. § 238 providing for the appointment of special administrators, and prescribing their duties, powers, and the limitation thereof as to both scope and time during which the same may be exercised. This section reads as follows: "When for any reason there is a delay in issuing letters testamentary or of administration, and the property of the deceased is in danger of being lost, injured, or depreciated, the court may appoint a special administrator to take charge of the estate. Such administrator shall qualify in like manner and have the powers and perform the duties of an administrator generally, <u>except that he is not authorized to pay the debts of or otherwise discharge any obligation against the deceased. Upon the issuing of letters testamentary or of administration, the powers of the special administrator cease.</u>" [Underscoring ours.]

The second source of authority is the Court's Order of January 24, 1978, which states in pertinent part, listing a number of specific powers conferred on the SPR:

(1) Authorizing First Pennsylvania Bank, N.A. to collect any debts due to the Estate of Claude Caron including any moneys due or to become due to said Estate from West Indies Corporation, its affiliates, subsidiaries or successors;

(2) Authorizing First Pennsylvania Bank, N.A. to utilize any funds of the Estate for the purpose of paying current expenses of the estate such as mortgage payments, utility bills, maintenance expenses of real property belonging to the Estate, expense of caring for any pets or animals belonging to the estate and all other normal incidental and necessary expenses for the protection, conservation and collection of the assets of the estate;

(3) Authorizing First Pennsylvania Bank, N.A. to retain and hire Thomas O'Connor to represent the Estate, together with Attorney Charles S. Waggoner II, in any and all tax matters between the Estate and the Department of Finance, Government of the Virgin Islands, arising out of matters prior to the death of Claude Jean Caron;

(4) Authorizing First Pennsylvania Bank, N.A. to sell the AMC "Pacer" automobile belonging to the estate and to utilize such of the proceeds as are necessary to pay off any liens on such automobile and to hold the balance in a separate Savings account in the name of the Estate;

97

(5) Authorizing First Pennsylvania Bank, N.A. to rent, for a period not to exceed one year, the real property known and described as Parcels Nos. 1M and 1L Estate Wintberg, No. 3 Great Northside Quarter, St. Thomas, Virgin Islands together with the buildings and furnishings therein excepting therefrom the garage and apartment-office and the three storage rooms on the lower level of the house, and further excepting therefrom such furnishings as are hereinafter authorized to be immediately distributed from the Estate and such other furnishings as may be, in the opinion of First Pennsylvania Bank, N.A., not desirable to be included in the rental. First Pennsylvania Bank, N.A. is further authorized to retain Attorney Charles S. Waggoner II as its counsel in connection with the drafting and negotiation of any such lease at his normal hourly rate of $75.00 per hour;

(6) Authorizing First Pennsylvania Bank, N.A. to distribute to Leslie Caron Laughlin all books (other than art books), records, tapes, record and tape players owned by the decedent, Claude Jean Caron, at the time of his death;

(7) Authorizing First Pennsylvania Bank, N.A. to distribute to Aimery Caron, the Piaget Watch No. 12,303 and all other personal jewelry owned by the decedent, Claude Jean Caron, at the time of his death;

(8) Authorizing First Pennsylvania Bank, N.A. to hire the services of B. Anker Jensen to inventory and appraise the furnishings and fixtures and other personal property of the decedent, Claude Jean Caron, located at the real property known and described as Parcels Nos. 1M and 1L Estate Wintberg, No. 3 Great Northside Quarter, St. Thomas, Virgin Islands and to pay for such services out of any general funds of the estate.

The exceptions filed by the Heirs on the issue of wrongful use of this authority are as follows: Paying legal and other expenses incurred by Monique and Robert Odell in their unsuccessful petition to have admitted to probate and record the Will left by Caron, which was declared by the Court to be invalid, and like expenses incurred in their unsuccessful defense of a suit to determine the ownership of Caron's apartment in the French Courts, in the total sum of $81,037.09, with credit due but not

claimed for the sum of $1,837.28 which this Court approved to be paid to Dudley, Dudley & Topper on April 14, 1984; the entire amount of living expenses of the Odells while they occupied an apartment in Caron's property at Estate Wintberg in the total sum of $18,685.33, instead of charging the Odells a fair rental for the use of the property during the period of their occupancy, as the appointment order required the SPR to do; disbursements to Robert and Monique Odell for "administration" expenses, in the amount of $9,000.00 although they were never appointed to fill the office of administrator; expenses related to the Commodore Corporation, in addition to the legal and other expenses listed above; substantial inaccurate false and misleading information relative to the distribution of various personal items of Caron authorized by the Court's Order of January 24, 1978; the payment to the Bank as SPR of fees and commissions in the amount of $14,669.88, without the benefit of any authorizing order of the Court; the payment to itself for management of the trust of the amount of $19,771.81, although the lawsuits contesting the validity of both the Will and the trust were pending, and all actions of the trustee except those permitted by virtue of the § 238 statute and Court Order were stayed during the pendency and outcome of these actions; the listing in the Final Accounting of an additional claim of $14,385.65 for fees and commissions owed the Bank for past services; and an additional undetermined amount for the costs of preparing the accountings, all of which fees and charges without the benefit of Court order(s).

All credits claimed under Disbursements, except the first three items and one at the bottom of Page 98 paid to Vitelco, one at the top of Page 97 paid to WAPA, and one at the bottom of Page 98 entitled Miscellaneous Charges of Administration were made after the actions to declare the Will and trust void had been filed and after the Order of Court appointing the SPR was issued. These six items appear to be personal expenses of the Odells.

"Inclusio Unius Est Exclusio Alterius", literally translated: the inclusion of one is the exclusion of another and, paraphrased as applicable here, meaning: having listed these powers, all others are legally excluded, and thus may not be exercised by the SPR. This is a cardinal principle of statutory construction. 11 Coke 58b; Burgin v. Forbes, 293 Ky. 456, 169 S.W.2d 321, 325; Black's Law Dictionary, Revised Fourth Edition.

■ It hardly takes close scrutiny for one to determine that none of the items, the payment of which is excepted to by the Heirs of Caron, are authorized by 15 V.I.C. § 238 or the January 24, 1978, Court Order. In fact the statute prohibits the SPR from paying even the debts of the deceased or discharging his obligations. Furthermore, most of the items listed above are not even the debts or obligations of the deceased, but those of others. All of the expenses objected to clearly fall outside of the scope of authority of the SPR, as above delineated. On that basis alone, the Court is duty bound to disallow them. Many of the expenditures excepted to are in clear violation of the fiduciary obligations of the SPR and the Bank as trustee. These obligations require guarding closely and jealously, and protecting and preserving with great care, the interests of those legally entitled to the assets of both the estate and the trust.

■■ This is not to say that the SPR may not be entitled to a reasonable fee for its services. But application for the allowance thereof must be filed with the Court, and the allowance thereof made, according to well-known and established practice. If and when such application is made, it will be evaluated according to its merits. 15 V.I.C. § 569. It is clear that until the discrepancies herein listed are corrected, it would be inappropriate to discharge the SPR.

The heirs cite several cases in support of their many contentions on Pages 6, 7, 11, and 12 of The Response, to wit: 31 Am. Jur. 2d, Executors and Administrators, Section 650, p. 275; Rich v. Dixon, 212 A.2d 417, 421 (Conn. 1965); 31 Am. Jur. 2d, supra at Section 653; Rich v. Dixon, supra, 212 A.2d at 420; Baker v. St. Louis Union Trust Co., 234 S.W. 858 (Mo. App. 1921) and 234 S.W. at 860; Rhoden v. First National Bank of Nevada, 615 P.2d 244 (Nev. 1980) and Id., 615 P.2d at 245; Drake v. Muse Currie & Kohen, 532 S.W.2d 369 (Tex. Civ. App. 1975); In re Law's Estate, 113 N.W.2d 233 (Iowa 1962); Id., 113 N.W.2d at 235; In re Faust's Estate, 73 A.2d 369 (Pa. 1950); In re Underwood's Estate, 6 Alaska Rep. 672 (Alaska 1922); Banks v. Junk, 264 So. 2d 387 (Miss. 1972); see, In re Estate of Huber, 107 Cal. Rptr 89 (Cal. App. 1973) and Id., 107 Cal. Rptr at 94–95. These authorities are corroborative of the positions we take as to the meaning and application of 15 V.I.C. § 238 and the applicable provisions of the Court Order of January 24, 1978.

100

## C. ARE THE DOCUMENTS SUBMITTED BY THE SPR ON OCTOBER 5, 1987, A FINAL ACCOUNT AS DEFINED BY 15 V.I.C., SECTION 564?

The GPR contends that the Final Accounting presented by the SPR is deficient in two respects. First, it contains many items which on its face it was clearly unauthorized to transact. These have been considered above.

The second is that the SPR has failed to comply with the law by attaching to its submission the supporting proofs of payment required. We agree. Although the SPR disbursed almost $650,000.00 during its special executorship, not a single voucher or receipt was presented by it to the Court justifying one cent of the claimed expenditures.

■ The law on this issue is clear, and reads in pertinent part: "When the estate is fully administered the executor or administrator shall file his final account. Such account shall be verified and shall contain a detailed statement of the amount of money received and expended by him, from whom received and to whom paid, and refer to the vouchers for such payments, and amount of money and property, if any remaining unexpended or unappropriated." 15 V.I.C. § 564(a); 5 V.I.C. App. IV, Rule 199. Therefore, no credit claimed, even if not illegal, will be allowed unless payment showing entitlement to same is proved by submission of supporting vouchers or in some other manner approved by the Court.

■ Until these deficiencies are taken care of, the Court is without power to discharge the SPR, i.e., give it a clean bill of health.

## D. WHETHER THE BANK SHOULD FORTHWITH CEASE ALL FURTHER DISTRIBUTION FROM THE ESTATE AND THE TRUST AND SURRENDER TO THE GPR THE REMAINDER OF THE ASSETS AND THE TRUST, UPON POSTING THE $600,000.00 ADMINISTRATOR'S BOND PREVIOUSLY FIXED BY THE COURT

■ On January 24, 1978, we appointed the Bank Executor Pro Tem or Special Administrator pursuant to 15 V.I.C. § 238. This vested the Bank with the authority of Temporary personal representative of Caron and his estate until a general administrator was appointed. On March 10, 1987, we appointed Aimery Caron as the general personal representative. This appointment had several

effects. First, the authority of the temporary administrator, the Bank, the SPR, to conduct any business on behalf of Caron, as the administrator of his estate, immediately came to an end. Second, the SPR, the Bank, was duty bound to forthwith surrender all assets of the estate and the trust to the general administrator; and, third, the SPR was duty bound to make a Final Accounting according to law of its doings as SPR to the Court.

We have already stated our position on the submission of the Final Account. We now express the opinion of the Court that if the Bank has not already done so, it will be ordered to immediately cease all transactions relating to the estate of Caron or the trust, including the making of any distributions from the assets of the estate or the trust, and to surrender all the assets of the estate and the trust to the general administrator, Aimery Caron.

It is clear from the foregoing that unless and until the aforesaid discrepancies as to the ultra vires conduct of the SPR and the deficiencies in its Final Account submission are corrected in accordance with this Opinion, that it would be wholly inappropriate for the Court to grant it a discharge as having performed the functions of its office according to law.

Let Order issue in accordance with the contents of this Opinion.

## ORDER

The Court having issued its Opinion herein on even date herewith, and being fully advised and satisfied in the premises, it is hereby

ORDERED:

1. That the SPR's submission of its Final Account to the Court shall be prepared in accordance with the terms of this Opinion.

2. That the Bank's application to be discharged as SPR is denied.

3. That the Bank shall immediately cease all further distribution from the estate or the trust of Caron, or any other acts connected therewith, except as necessary to comply with the terms of this Order and of the Opinion on which it is based, or as otherwise specifically authorized by law.

4. That the Bank shall immediately surrender to the GPR, upon his posting bond, the remainder of the assets of the estate and the trust.

5. That the SPR shall submit a Final Account of its doings in that office in accordance with law as discussed in the Opinion on which this Order is based within thirty (30) days from the date hereof.